IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, | |
| Plaintiff, | Case No. 3:17-cv-774-J-32MCR |
| vs. | ORDER FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS CIT INVESTMENTS LLC, BREVSPAND EOOD, AND CIT INVESTMENTS LTD. |
| Jason B. Scharf (d/b/a Citrades.com and AutoTradingBinary.com); CIT Investments LLC; Brevspand EOOD; CIT Investments Ltd.; A & J Media Partners, Inc.; Michael Shah; and Zilmil, Inc., | |
| Defendants. | Hon. Timothy J. Corrigan |

1.      On July 10, 2017, Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") filed a Complaint for Injunctive Relief and Demand for Jury Trial, ("Complaint") (Doc. #3) against defendants Jason B. Scharf (d/b/a Citrades.com and AutoTradingBinary.com); CIT Investments LLC; Brevspand EOOD; CIT Investments Ltd.; A & J Media Partners, Inc.; Michael Shah; and Zilmil, Inc., (collectively, "Defendants").

2.      The Complaint charges Defendants Jason B. Scharf; CIT Investments LLC ("CIT Investments"); Brevspand EOOD ("Brevspand"); CIT Investments Ltd. ("CIT Anguilla") and; A & J Media Partners, Inc. ("A&J Media") (collectively, "Citrades Defendants") with, among other things:

a.      off-exchange retail transactions in swaps, in violation of Section 2(e) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 2(e) (2012);

b.      off-exchange transactions in commodity options, in violation of Section 4c(b)

of the Act, 7 U.S.C.§ 6c(b) (2012), and Regulation 32.2, 17 C.F.R. § 32.2

(2017); and

c.      fraud in violation of:

I.      Section 4c(b) of the Act, 7 U.S.C.§ 6c(b), and Regulation 32.4,

17 C.F.R. § 32.4 (2017), which prohibit fraud in connection with

commodity options transactions;

II.     Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1) (2012), which prohibits

fraud by, among others, a commodity trading advisor ("CTA"), and

Regulation 4.41(a), 17 C.F.R. § 4.41(a) (2017), which prohibits fraud

in advertising by, among others, a CTA or any principal thereof; and

III.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation

180.1(a), 17 C.F.R. § 180.1(a) (2017), which prohibit fraud in

connection with swaps transactions.

3.      The Complaint charges Defendants Michael Shah and Zilmil, Inc. ("Zilmil"),

(collectively, "Zilmil Defendants") with, among other things:

a.      conducting activity with respect to off-exchange transactions in commodity

options, in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and

Regulation 32.2, 17 C.F.R. § 32.2; and

b.      fraud in violation of:

I.      Section 4c(b) of the Act, 7 U.S.C.§ 6c(b), and Regulation 32.4,

17 C.F.R. § 32.4, which prohibit fraud in connection with commodity

options transactions;

II.     Section 4$o$(1) of the Act, 7 U.S.C. § 6$o$(1), which prohibits fraud by,

among others, a commodity trading advisor ("CTA"), and Regulation

4.41(a), 17 C.F.R. § 4.41(a), which prohibits fraud in advertising by,

among others, a CTA or any principal thereof; and

III.    Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a),

17 C.F.R. § 180.1(a), which prohibit fraud in connection with swaps

transactions.

4.      On July 12, 2017, this Court entered a Statutory Restraining Order ("SRO")

against Defendants (Doc. #8) that, among other things: froze Defendants' assets; prohibited

Defendants from destroying books and records, or denying the Commission access to such

books and records; appointed Kenneth Dante Murena of DAMIAN & VALORI LLP, 1000

Brickell Ave., Suite 1020, Miami, FL 33131, as Temporary Receiver, with the full powers of

an equity receiver, for Defendants and their affiliates and subsidiaries; required Defendants

to provide the Temporary Receiver with an accounting; and ordered Defendants to appear

before the Court on July 26, 2017, to show cause why an Order for Preliminary Injunction

should not be entered.

5.      On July 21, 2017, the Court granted the Zilmil Defendants' unopposed motion

to continue the hearing on the order to show cause until August 10, 2017.  (Doc. #26.)

6.      On August 9, 2017, the Court entered, upon joint motion of the Commission and Defendants Jason B. Scharf, A&J Media, Michael Shah, and Zilmil (collectively, "Consenting Defendants"), a Consent Order for Preliminary Injunction ("Consent Order") (Doc. #32).  The Consent Order, among other things: continues the freeze with respect to Consenting Defendants' assets, subject to certain enumerated exceptions; continues the prohibition against Consenting Defendants destroying books and records, or denying the Commission access to such books and records; appoints Kenneth Dante Murena as Permanent Receiver with respect to the Consenting Defendants; and enjoins Consenting Defendants from engaging in certain enumerated acts in violation of the Act.

7.      Defendants CIT Investments, Brevspand, and CIT Anguilla (collectively, "Remaining Defendants") have failed to appear or show cause why a preliminary injunction should not be issued against them.

8.      The Court has considered the pleadings, declarations, exhibits, and memorandum filed in support of the Commission's motion for the SRO, and held a hearing on the motion on July 12, 2017, the record of which is incorporated by reference.  The Court finds that:

9.      This Court has jurisdiction over Remaining Defendants and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(a) (2012), which authorizes this Court to enter a temporary injunction against Remaining Defendants.

10.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), in that Remaining Defendants are found, inhabit, or transact

business in this district, and the acts and practices in violation of the Act have occurred, are

occurring, or are about to occur within this district.

11.     There is good cause to believe that Remaining Defendants have engaged in,

are engaging in, or are about to engage in:

    a.     off-exchange retail transactions in swaps, in violation of Section 2(e) of the

        Act, 7 U.S.C. § 2(e);

    b.     off-exchange transactions in commodity options, in violation of Section 4c(b)

        of the Act, 7 U.S.C.§ 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2; and

    c.     fraud in violation of:

        I.     Section 4c(b) of the Act, 7 U.S.C.§ 6c(b), and Regulation 32.4,

            17 C.F.R. § 32.4, which prohibit fraud in connection with commodity

            options transactions;

        II.     Section 4o(1) of the Act, 7 U.S.C. § 6o(1), which prohibits fraud by,

            among others, a commodity trading advisor ("CTA"), and Regulation

            4.41(a), 17 C.F.R. § 4.41(a), which prohibits fraud in advertising by,

            among others, a CTA or any principal thereof; and

        III.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a),

            17 C.F.R. § 180.1(a), which prohibit fraud in connection with swaps

            transactions.

12.     There is good cause to believe that from June 2013 through the present

("Relevant Period"), Remaining Defendants, as part of the Citrades Defendants' common

enterprise, have operated a massive scam in which the Citrades Defendants fraudulently

5

solicited customers to enter into illegal, off-exchange investments in so-called "binary options."  During the Relevant Period, Remaining Defendants, as part of the Citrades Defendants' common enterprise, received at least $16 million in customer funds and opened more than 140,000 accounts.

13.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for customers in the form of monetary or other redress will occur from the sale, transfer , assignment, or other disposition by Remaining Defendants of assets or records unless Remaining Defendants are immediately restrained and enjoined by Order of the Court.

14.     Therefore, there is good cause for the Court to freeze assets owned, controlled, managed, or held by or on behalf of, or for the benefit of Remaining Defendants.

15.     There is good cause for entry of an order prohibiting Remaining Defendants, their agents, servants, employees , assigns, attorneys, and persons in active concert or participation with the Remaining Defendants, including any successor thereof, from destroying records and/or denying agents of the Commission access to inspect and copy records, when and as requested, to ensure that Commission representatives have immediate and complete access to those books and records.

16.     There is good cause for the Plaintiff to conduct expedited discovery in order to determine the full extent of Remaining Defendants' alleged wrongdoing, locate Remaining Defendants' other customers, identify customer funds and other assets of Remaining Defendants and clarify the source and whereabouts of various funds.

6

17.     There is good cause for the appointment of a Permanent Receiver to take control of all assets owned, controlled, managed or held by, on behalf of, or for the benefit of Remaining Defendants in order to preserve assets, investigate and determine customer claims, determine unlawful proceeds retained by Remaining Defendants and amounts due to customers as a result of Remaining Defendants' alleged violations, and distribute remaining funds under the Court's supervision.

18.     There is good cause to require an accounting by Remaining Defendants to determine the location and disposition of customer funds.

19.     There is good cause to order repatriation of assets controlled by Remaining Defendants to assure payment of restitution and disgorgement as authorized and for the benefit of customers.

20.     Absent the entry of this statutory restraining order, Remaining Defendants are likely to dissipate or transfer assets and destroy business records.

21.     There is good cause to enjoin Remaining Defendants from further violations of the Act, including engaging in off-exchange swaps or options transactions, i.e., binary options, and fraud in connection with options, swaps, or CTA activities.

22.     Weighing the equities and considering the Commission's likelihood of success, this is a proper case for granting a preliminary injunction to preserve the status quo, protect public customers from loss and damage, and enable the Commission to fulfill its statutory duties, therefore the Court orders as follows:

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

23.     The term "assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all cash, wherever located, whether in the United States or outside the United States.

24.     The term "document" is synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a), and includes, but is not limited to, all writings or printed matter of any kind, including without limitation: records, correspondence, memoranda, notes, rolodexes, address books, diaries, statistics, e-mail, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice or intra-office communications, telephone message slips, offers, notations of conversations, bulletins, drawings, plans, computer printouts, computer input or output, teletypes, facsimiles, invoices, worksheets, ledger books, books of accounts, and all drafts, alterations, modifications, changes and amendments of any of the foregoing.  The term "document" also includes graphs, charts, photographs, phonographic record, audio and video recordings, computer records, and other data compilations from which information can be obtained or translated, if necessary, through detection devices into reasonable usable form.  The term "document" also refers to each and every document in Defendant(s)' actual or constructive possession, including but not limited

8

to: (i) all documents within Defendant(s)' custody or control of any of Defendant(s)' present or former agents, employers, employees, partners, and (ii) all documents which Defendant(s) have a legal or equitable right to obtain from another person.  A draft or non-identical copy is a separate document within the meaning of the term.  A document also includes the file and folder tabs associated with each original and copy.

25.     "Defendant(s)" refers to Jason Scharf, CIT Investments, Brevspand, CIT Anguilla, A&J Media, Michael Shah, and Zilmil.

26.     "Remaining Defendant(s)" refers to CIT Investments, Brevspand, and CIT Anguilla.

## RELIEF GRANTED

**A.     Preliminary Injunctive Relief**

**THE PARTIES AGREE AND IT IS HEREBY ORDERED**

27.     Remaining Defendants, their officers, agents, servants, employees, successors, assigns and/or attorneys, and all persons in active concert or participation with Remaining Defendants, including any successor thereof, who receive actual notice of this Order by personal service or otherwise, are hereby restrained, enjoined, and prohibited until further order of the Court, from directly or indirectly:

a.     Offering to enter into, entering into, confirming the execution of, maintaining positions in, or otherwise conducting activities relating to binary options;

b.     Acting as an affiliate marketer in any capacity that involves binary options or any commodity interest (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3 (yy) (2017));

c.      Offering so-called autotrading systems or services that purport to trade binary

options or any commodity interest (as that term is defined in Regulation

1.3(yy), 17 C.F.R. § 1.3 (yy) (2017));

d.      Entering into swaps transactions with retail customers off of a registered

exchange or otherwise violating Section 2(e) of the Act, 7 U.S.C. § 2(e);

e.      Offering to enter into, entering into, confirming the execution of, maintaining

positions in, or otherwise conducting activities relating to commodity options

off of a registered exchange or otherwise violating Section 4c(b) of the Act,

7 U.S.C. § 6c(b), and Regulation 32.2, 17 C.F.R. § 32.2;

f.      Acting in a capacity requiring registration without the benefit of registration

or otherwise violating Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1) (2012),

or Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012);

g.      Using the instrumentalities of interstate commerce to (1) cheat or defraud, or

attempt to cheat or defraud, customers or prospective customers; (2) make or

cause to be made false reports or statements to customers or prospective

customers; or (3) deceive or attempt to deceive customers and prospective

customers in, or in connection with, an offer to enter into, the entry into, or the

confirmation of the execution of, any commodity option transaction or

otherwise violating Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation

32.4, 17 C.F.R. § 32.4;

h.      Using the instrumentalities of interstate commerce to (1) employ any device,

scheme, or artifice to defraud clients or prospective clients, or (2) engage in

10

any transaction, practice, or course of business which operates as a fraud or deceit upon clients or prospective clients or otherwise violating Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1), and Regulation 4.41(a), 17 C.F.R. § 4.41(a);

i.    Using the instrumentalities of interstate commerce to (1) use or employ, or attempt to use or employ, manipulative devices, schemes, and artifices to defraud; (2) make, or attempt to make, untrue or misleading statements of a material fact; (3) omit to state material facts necessary in order to make statements made not untrue or misleading; or (4) engage, or attempt to engage, in acts, practices, and courses of business, which operate or would operate as a fraud or deceit upon customers or prospective customers in connection with swap transactions or otherwise violate Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a).

28.    Pending further order of the Court, Remaining Defendants are further restrained and enjoined from:

a.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a (40) (2012);

b.    entering into any transactions involving commodity interests (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3 (yy)), for their own personal account or for any account in which they have a direct or indirect interest;

c.    having any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts traded on their behalf;

11

d.      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

e.      soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, swaps, and/or forex contracts;

f.      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017); and

g.      acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

**B.    Asset Freeze Order Prohibiting the Transfer, Removal, Dissipation, and Disposal of Assets**

29.    **IT IS HEREBY ORDERED** that Remaining Defendants and their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successor thereof, who receive actual notice of this Order by personal service or otherwise, are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly transferring, selling, alienating, liquidating,

encumbering, pledging, leasing, loaning, assigning, concealing, dissipating, converting, withdrawing, or otherwise disposing of any Remaining Defendants' assets, wherever located, including Remaining Defendants' assets held outside the United States, except as provided otherwise in Sections F and G of this Order, or as otherwise ordered by the Court;

30.     Remaining Defendants are restrained and enjoined from directly or indirectly opening or causing to be opened any safe deposit boxes titled in the name of or subject to access by Remaining Defendants.

31.     Notwithstanding the provisions of this Section B, at the request of the Permanent Receiver, Remaining Defendants and any other person who has possession, custody, or control of any of Remaining Defendants' assets shall transfer possession of all assets subject to this Order to the Permanent Receiver in accordance with Section H of this Order.

32.     The assets affected by this Order shall include both existing assets and assets acquired after the effective date of this Order.

**C.     Directives to Financial Institutions and Others**

33.     **IT IS FURTHER ORDERED**, pending further Order of this Court, that any financial or brokerage institution, business entity, or person that holds or has held, controls or has controlled, or maintains or has maintained custody of any account or other of Remaining Defendants' assets at any time since June 2013 shall:

a.     Immediately upon receipt of a copy of this Order, prohibit Remaining Defendants and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting,

13

selling or otherwise disposing of any of Remaining Defendants' assets, except as expressly permitted herein or as directed by further order of the Court.

b.    Immediately upon receipt of a copy of this Order deny Remaining Defendants and all other persons access to any safe deposit box that is: (1) owned, controlled, managed, or held by, on behalf of, or for the benefit of Remaining Defendants, either individually or jointly; or (2) otherwise subject to access by Remaining Defendants.

c.    Within five (5) business days of receiving a copy of this Order, provide the Permanent Receiver a statement setting forth: (1) the identification number of each and every account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Remaining Defendants, either individually or jointly; (2) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is received, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (3) the identification of any safe deposit box that is either owned, controlled, managed, or held by, on behalf of, or for the benefit of Remaining Defendants, either individually or jointly, or is otherwise subject to access by any Non-Defendants.

d.    Within ten (10) business days of a request by the Permanent Receiver, or such longer period specified by the Permanent Receiver, provide the Permanent

14

Receiver with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

e.     Cooperate with all reasonable requests of the Permanent Receiver or the Commission relating to implementation of this Order, including transferring funds at the Permanent Receiver's direction and producing records related to Remaining Defendants' accounts.

**D.     Maintenance of and Access to Business Records**

**IT IS HEREBY ORDERED that:**

34.     Remaining Defendants, and all persons or entities who receive notice of this Order by personal service or otherwise, are restrained from directly or indirectly destroying, mutilating, erasing, altering, concealing or disposing of, in any manner any documents that refer or relate in any manner to any transaction or matter described in the Complaint in this case, including the business practices or business or personal finances of any Remaining Defendant.

**E.     Inspection and Copying of Books and Records**

**IT IS FURTHER ORDERED that:**

35.     Representatives of the Commission (accompanied by representatives of other state or federal authorities, including the Federal Bureau of Investigation, if the Commission

so desires) shall be allowed immediate and continued access to inspect the books, records, and other documents of Remaining Defendants and their agents that refer or relate in any manner to any transaction or matter described in the Complaint in this case, including, but not limited to, paper documents, electronically stored information, tape recordings, and computer discs, when and as requested wherever they may be situated and whether they are in the possession of the Non-Defendants or others, and to copy said documents, data and records, either on or off the premises where they may be situated.

36.     For email or other accounts that contain personal communications of the individual Defendants not relating in any manner to any transaction or matter described in the Complaint, the Commission shall not disclose such communications, and shall treat such communications as confidential.

37.     Nothing in this Section E shall preclude the Commission from providing materials obtained from Defendants to any other government agency pursuant to a lawful access request by such agency.

**F.     Order Appointing Permanent Receiver.**

**IT IS FURTHER ORDERED that:**

38.     The Court appoints Kenneth Dante Murena of DAMIAN & VALORI LLP, 1000 Brickell Ave., Suite 1020, Miami, FL 33131 as Permanent Receiver, with the full powers of an equity receiver, for Remaining Defendants and their affiliates and subsidiaries (hereinafter referred to as the "Receivership Defendants"), and of all the funds, properties, premises, accounts, income, money now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the

Receivership Defendants (hereinafter, the "Receivership Estate").  The Permanent Receiver shall be the agent of this Court in acting as Permanent Receiver under this Order.

39.     The Permanent Receiver is directed and authorized to accomplish the following:

a.     Assume full control of the Receivership Defendants by removing Remaining Defendants, and any officer, independent contractor, employee, or agent of the Receivership Defendants, from control and management of the affairs of the Receivership Defendants;

b.     Take exclusive custody, control, and possession of the Receivership Estate with the full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, contracts, financial records, monies on hand in banks and other financial institutions, and other papers and documents of the Receivership Defendants and customers or clients whose interests are now held by or under the direction, possession, custody or control of the Receivership Defendants;

c.     Perform all acts necessary, including the suspension of operations, to conserve, hold, manage, and preserve the value of the Receivership Estate in order to prevent an irreparable loss, damage, or injury to customers;

d.     Prevent the withdrawal or misapplication of funds entrusted to the Receivership Defendants, and otherwise protect the interests of customers or clients;

e.      Manage and administer the Receivership Defendants and the Receivership

Estate by performing all acts incidental thereto that the Permanent Receiver

deems appropriate, including hiring or dismissing any and all personnel,

suspending operations, and/or entering into agreements, including but not

limited to: (1) the retention and employment of investigators, attorneys, or

accountants of the Permanent Receiver's choice, including without limitation

members and employees of the Permanent Receiver firm, to assist, advise, and

represent the Permanent Receiver; and (2) the movement and storage of any

equipment, furniture, records, files or other physical property of the

Receivership Defendants;

f.      Collect all money owed to the Receivership Defendants;

g.      Initiate, defend, compromise, adjust, intervene in, dispose of, or become a

party to any actions or proceedings in state, federal or foreign court that the

Permanent Receiver deems necessary and advisable to preserve or increase the

value of the Receivership Estate or that the Permanent Receiver deems

necessary and advisable to carry out the Permanent Receiver's mandate under

this Order;

h.      Choose, engage and employ attorneys, accountants, appraisers, and other

independent contractors and technical specialists, as the Permanent Receiver

deems advisable or necessary in the performance of duties and responsibilities

under the authority granted by this Order;

i. Issue subpoenas to obtain documents and records pertaining to the Receivership and conduct discovery in this action on behalf of the Receivership Estate;

j. Open one or more bank accounts  and deposit all funds of the Receivership Estate in such designated accounts and make all payments and disbursements from the Receivership Estate from such accounts;

k. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, provided that the Permanent Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except for payments that the Permanent Receiver deems necessary or advisable to secure the Receivership Estate from immediate and irreparable loss;

l. Maintain written accounts itemizing receipts and expenditures, describing properties held or managed, and naming the depositories holding funds or other assets of the Receivership Estate; make such written accounts and supporting documentation available to the Commission for inspection; and, within sixty (60) days of being appointed and periodically thereafter, as directed by the Court, file with the Court and serve on the parties a report summarizing efforts to marshal and collect assets, administer the Receivership Estate, and otherwise perform the duties mandated by this Order.

### G.     Accounting and Transfer of Funds and Documents

40.     **IT IS FURTHER ORDERED** that, to the extent Remaining Defendants have not done so pursuant to the SRO, within **five (5) business days** following the service of this Order, each Remaining Defendant shall:

a.     Provide the Permanent Receiver with a full detailed accounting of all funds, documents, and assets, including the assets inside and outside of the United States that are held by each and every Remaining Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly.

b.     Transfer to the territory of the United States and deliver to possession, custody, and control of the Permanent Receiver, all funds, documents, and assets (other than real property) located outside of the United States that are held by each and every Remaining Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly, unless the Permanent Receiver determines that repatriation or liquidation of such assets within the five (5) days provided by the Order would be detrimental to the Receivership Estate.  With respect to real property and other assets (including accounts) located outside the United States held by each and every Remaining Defendant, each Remaining Defendant shall forthwith take all steps necessary to transfer all rights, title and interest in such real property and other assets to the Permanent Receiver.

c.     Provide the Permanent Receiver access to all records of accounts or assets of the Remaining Defendants held by financial institutions located within or

outside the territorial United States by signing the Consent to Release of Financial records attached to this Order.

**IT IS FURTHER ORDERED, that:**

41.     To the extent Remaining Defendants have not done so pursuant to the SRO, Remaining Defendants shall, within 24 hours of service of this Order, cause to be prepared and delivered to the Permanent Receiver, a detailed and complete schedule of all passwords and identification (ID) numbers for all websites, cloud storage services, videophone accounts and all accounts at any bank, financial institution or brokerage firm (including any introducing broker or futures commission merchant) operated by or to which any of the Remaining Defendants has access.

42.     To the extent Remaining Defendants have not done so pursuant to the SRO, Remaining Defendants shall, within 24 hour of the issuance of this Order, cause to be prepared and delivered to the Permanent Receiver, a detailed and complete schedule of all desk top computers, laptop computers and or mobile devices owned and/or used by them in connection with their business.  The schedules required by this section shall include at a minimum the make, model and description of each, along with the location, the name of the person primarily assigned to use the computer and/or mobile device, and all passwords necessary to access and use the software contained on the computer and/or mobile device. The Commission shall be authorized to make an electronic, digital or hard copy of all of the data contained on the computer(s) and/or mobile device(s) that refer or relate in any manner to any transaction or matter described in the Complaint in this case.

43.     For email or other accounts that contain personal communications of the individual Defendants not relating in any manner to any transaction or matter described in the Complaint, the Permanent Receiver shall not disclose such communications, and shall treat such communications as confidential.

44.     Nothing in this Section G shall preclude the Commission from providing materials obtained from Defendants to any other government agency pursuant to a lawful access request by such agency.

## H.     Turning Over Property to the Permanent Receiver

### IT IS FURTHER ORDERED that:

45.     To the extent Remaining Defendants have not done so pursuant to the SRO, immediately upon service of this Order upon them, Remaining Defendants, and any other person or entity served with a copy of this Order, shall immediately or within such time as permitted by the Permanent Receiver in writing, deliver over to the Permanent Receiver:

a.      Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated, of the Receivership Defendants;

b.      Possession and custody of records of the Receivership Defendants, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other records of the Receivership Defendants;

c.      Possession and custody of all funds and other assets belonging to members of the public now held by the Receivership Defendants;

d.      All keys, computer passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or records of the Receivership Defendants, including but not limited to, access to the Receivership Defendants' business premises, means of communication, accounts, computer systems, or other property; and

e.      Information identifying the accounts, employees, properties or other assets or obligations of the Receivership Defendants.

**I.      Directive to Cooperate with Permanent Receiver**

      **IT IS FURTHER ORDERED that:**

46.      Remaining Defendants, and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Permanent Receiver.  This cooperation and assistance shall include, but not be limited to, providing any information to the Permanent Receiver that the Permanent Receiver deems necessary to exercising the authority as provided in this Order; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Permanent Receiver under this Order, and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Permanent Receiver.

**J.      Stay on Actions By the Receivership Defendants**

      **IT IS FURTHER ORDERED that:**

47.     Except by leave of the Court, during the pendency of the receivership ordered herein, Remaining Defendants, and all other persons and entities be and hereby are stayed from petitioning, or assisting in the filing of a petition, that would cause the Receivership Defendants to be placed in bankruptcy.

**K.     Compensation for Permanent Receiver and Personnel Hired by the Permanent Receiver**

**IT IS FURTHER ORDERED that:**

48.     The Permanent Receiver and all personnel hired by the Permanent Receiver shall comply with Billing Instructions attached to the SRO.

49.     The Permanent Receiver shall maintain time and billing records in sufficient detail to distinguish, where feasible, between the fees and costs incurred with respect to the Citrades Defendants on the one hand, and the Zilmil Defendants on the other.

**L.     Bond Not Required of Plaintiff or the Permanent Receiver**

**IT IS FURTHER ORDERED that:**

50.     As Plaintiff Commission is an agency of the United States of America, which has made a proper showing under Section 6c(b) of the Act, 7 U.S.C. 13a-1(b), this restraining order is granted without bond.  Accordingly, the Permanent Receiver need not post a bond.

**M.     Assistance of U.S. Marshal's Service and Other Law Enforcement Personnel**

**IT IS FURTHER ORDERED that:**

51.     The United States Marshal's Service and other law enforcement personnel, including the Federal Bureau of Investigation, are authorized to accompany and assist (a) the Commission's representatives in undertaking such efforts as are reasonably necessary to ensure that the Commission's representatives have an unimpeded right to inspect and copy

books, records, and documents as set forth above wherever such books, records, and

documents are or are believed by the Commission to be located, and (b) the Permanent

Receiver in taking control and custody of the assets, records and business premises of the

Receivership Defendants.

**N.    Expedited Discovery**

      **IT IS FURTHER ORDERED that:**

52.    Notwithstanding the prohibition upon discovery before the early meeting of

counsel pursuant to Fed. R. Civ. P. 26(f), in accordance with Fed. R. Civ. P. 26(d), the

Commission is granted leave to conduct expedited discovery at any time after service of this

Order, to take the deposition of and demand the production of documents from any person or

entity for the purpose of discovering the nature, location, status, and extent of assets of the

Remaining Defendants, and the location of documents reflecting the business transactions  of

the Remaining Defendants; five (5) days' notice, personally, by facsimile or by electronic

mail, subject to reasonable and necessary scheduling accommodations, shall be deemed

sufficient for any such deposition and ten (10) days' notice, personally, by facsimile or by

electronic mail, subject to reasonable and necessary scheduling accommodations, shall be

deemed sufficient for the production of any such documents.

53.    The Commission may conduct expedited discovery to enable the Commission

to fulfill its statutory duties and protect investors from further loss or damage.  This

expedited discovery will allow the Commission to determine the full extent of Remaining

Defendants' alleged wrongdoing (including, but not limited to, the possible involvement of

others), locate Remaining Defendants' other customers, identify customers' funds and other of Remaining Defendants' assets, and clarify the sources of various funds.

54.      No deposition taken pursuant to this section N shall count towards the ten-deposition limit set forth in Fed. R. Civ. P. 30(a)(2)(A)(i).

**O.    Service on the Commission**

      **IT IS FURTHER ORDERED that:**

55.      Remaining Defendants shall comply with all electronic filing rules and requirements of the U.S. District Court of the Middle District of Florida, Jacksonville Division, and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the Commission by delivering a copy to Senior Trial Attorney Ashley J. Burden, Division of Enforcement, Commodity Futures Trading Commission, 525 West Monroe Street, Suite 1100, Chicago, Illinois 60661, aburden@cftc.gov, by electronic filing, e-mail, personal delivery or courier service (such as Federal Express or United Parcel Service) and not by regular mail due to potential delay resulting from heightened security and decontamination procedures applicable to the Commission's regular mail.

**P.    Force and Effect**

      **IT IS FURTHER ORDERED that:**

56.      This Order shall remain in full force and effect until further order of this Court, and that this Court retains jurisdiction of this matter for all purposes.

    **IT IS SO ORDERED**, at Jacksonville, Florida on this 10 day of August 2017.

 

_____

UNITED STATES DISTRICT JUDGE

## CONSENT TO RELEASE OF FINANCIAL RECORDS

I, _____, do hereby direct

any bank, trust, or other financial company, and its officers, employees, and agents, at which

I have a bank account or other financial account of any kind operated under my name or any

other name (including any corporation or entity) for which I am or was authorized to draw on

the account to disclose all information and deliver copies of all documents of every nature in

the bank, trust, or other financial company's possession or control which relate to said

accounts to any attorney or investigator of the Commodity Futures Trading Commission, and

to give evidence relevant thereto, in the matter of *Commodity Futures Trading Commission*

*v. Scharf, et al.*, No. 3:17-cv-774-J-32MCR, now pending before the United States District

Court for the Middle District of Florida, and this shall be irrevocable authority for so doing.

This direction is intended to apply not only to the laws of the United States but also to the

laws of countries other than the United States which restrict or prohibit the disclosure or bank

information without the consent of the holder of the account, and shall be construed as

consent with respect thereto, and the same shall apply to any of the accounts for which I may

be a relevant principal.

Dated: _____, 2017


_____
Signature


Title: