UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Commodity Futures Trading Commission,

    Plaintiff,

vs.

Jason B. Scharf (d/b/a Citrades.com and AutoTradingBinary.com); CIT Investments LLC; Brevspand EOOD; CIT Investments Ltd.; A&J Media Partners, Inc.; Michael Shah; and Zilmil, Inc.

    Defendants.
_____/

Case No. 3:17-cv-774-J-32MCR

**DEFENDANTS MICHAEL SHAH AND ZILMIL, INC.'S OBJECTION
TO PORTIONS OF RECEIVER'S INTERIM APPLICATION
FOR PAYMENT OF FEES AND EXPENSES**

Defendants Michael Shah and Zilmil, Inc., by and through their undersigned counsel, file their Objection to the Portions of Receiver's Initial Interim Application For an Order Approving And Authorizing Payment of Fees And Expenses of Receiver And His Professionals (the "Fee Motion") (Doc. 62). The Zilmil Defendants specifically object to the Receiver's decision to apportion 97% ($25,727.78) of fees and costs incurred for General Receivership Matters (the "General Fees/Costs") to the Zilmil Defendants while apportioning only 3% ($795.70) of those expenses to the Citrades Defendants. The Zilmil Defendants do not object to the Receiver's application for the General Fees/Costs, but submit that an equal apportionment of the General Fees/Costs among the Defendants is warranted and justified by the circumstances.

**INTRODUCTION AND BACKGROUND**

The CFTC initiated this action on July 10, 2017, alleging that the "Defendants…are the perpetrators of a massive fraud involving investments in so-called 'binary options.'" (Doc. 1).

While that allegation groups all Defendants together, the Zilmil Defendants are actually independent parties who had no role in the operation, ownership, or control of the Citrades Defendants which are accused of obtaining $16 million in customer funds though their operation of "an illegal binary options scam." It appears the CFTC is attempting to contend that the Zilmil Defendants are guilty by association simply through their alleged receipt of approximately $500,000 from the Citrades Defendants. The Zilmil Defendants operated a successful online marketing business involving numerous business niches unrelated to binary options and outside the CFTC's jurisdiction that generated revenues that have now been wrongfully frozen by the CFTC and seized by the Receiver. The Zilmil Defendants will address the extreme overbreadth of the asset freeze and seizure in a separate filing.

At the CFTC's request, the Court entered an Order on July 12, 2017 (Doc. 8) that, among other things, appointed Kenneth D. Murena as a temporary Receiver over all Defendants (the "Order Appointing Receiver").[1] Pursuant to the Order's asset freeze provision, the Receiver froze more than $10 million of the Zilmil Defendants' assets – a sum that included millions of dollars neither related to nor derived from the conduct alleged by the CFTC, and also far in excess of the revenues the CFTC alleges the Zilmil Defendants derived from the conduct at issue.[2] The Receiver also froze approximately $100,000 belonging to the Citrades Defendants. As a result of being placed in receivership, Zilmil's lawful businesses unrelated to binary options have been decimated and effectively destroyed. Nevertheless, the Zilmil Defendants have fully cooperated with the Receiver and his professionals (while reserving their constitutional rights),

---

[1] The Temporary Receiver's appointment was later converted to a Permanent Receiver in the Consent Preliminary Injunction entered on August 9, 2017 (Doc. 32).

[2] Of this amount, the Receiver has transferred approximately $5.5 million to fiduciary accounts he opened for the Receivership Estate.

including the identification of all accounts at financial institutions and the provision of account login information.

The Fee Motion sought approval of fees and costs incurred by the Receiver and his professionals from July 12, 2017 to September 30, 2017. This included approximately $155,000 in fees and costs incurred by the Receiver and his counsel and over $30,000 in fees and costs incurred by the Receiver's forensic accountants and other professionals. (Doc 62 at p. 2). At the Zilmil Defendants' request, the Receiver agreed to maintain separate records for fees and costs billed on behalf of the Zilmil Defendants and the Citrades Defendants. The fees and costs are summarized in the Fee Motion as follows:

|  | Receiver and Counsel Hours | Receiver and Counsel Fees and Costs | Forensic Accountant Hours | Forensic Accountant and Other Professionals Fees and Costs[3] |
|---|---|---|---|---|
| Citrades Defendants | 122.8 (24.89%) | $33,552.97 (26.09%) | 43.9 (37.02%) | $17,319.21 (56.39%) |
| Zilmil Defendants | 370.7 (75.11%) | $95,027.31 (73.91%) | 74.7 (62.98%) | $13,393.50 (43.61%) |

Despite the CFTC's allegations that the Citrades Defendants masterminded the illegal binary options scam that took in over $16 million from customers, and the cooperation of the Zilmil Defendants in providing all requested financial information to the Receiver, the Receiver and his counsel devoted approximately 75% of their fees and costs to work relating to the Zilmil Defendants. The work performed by the Receiver's forensic accountants and other professionals was more evenly apportioned, with the Citrades-related fees and costs incurred by those professionals (56.39%) actually exceeding the amount incurred for the Zilmil Defendants (43.61%).

---

[3] In addition to forensic professionals, the Receiver also retained both California and Bulgarian counsel to provide services relating to the Citrades Defendants.

3

The remaining approximately $26,500 in fees and costs incurred by the Receiver and his counsel were not attributed to any Defendant but rather were devoted to "general receivership and administrative work necessary to fulfill the Receiver's duties." As detailed in Exhibit B-3 to the Fee Motion, this include significant time for routine receivership matters such as the preparation of a receivership website, opening bank accounts, communications with the CFTC, meeting with forensic accountants, and the preparation of the Receiver's Initial Report. (Doc. 62-4). Rather than equally apportioning those fees and costs between the Zilmil Defendants and Citrades Defendants or using a ratio similar to the hours or expenses incurred relative to the two separate groups of Defendants, the Receiver proposes apportioning 97% ($25,727.78) of those expenses to the Zilmil Defendants and only 3% ($795.710) to the Citrades Defendants based on an objectively nonsensical formula: the ratio of assets collected from the Zilmil Defendants ($3.4 million during the relevant period as compared to less than $100,000 for the Citrades Defendants). Despite the Zilmil Defendants' requests, the Receiver refused to change that apportionment.

## ARGUMENT

**I.    STANDARD.**

The Zilmil Defendants do not dispute that this Court has the power to appoint a receiver under appropriate circumstances and to award the receiver and those appointed by him fees and costs for their services. *See, e.g., SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *SEC v. Mobley*, No. 00-CV-1316, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals). Whether a legitimate basis existed to appoint a Receiver

4

over the Zilmil Defendants' assets and whether there is a continuing need for a Receiver over their assets are issues that will be addressed in a separate filing.

The determination of fees to be awarded is largely within the discretion of the trial court. *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944). In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the receivership. *See Elliot*, 953 F.2d at 1577.

I. **EQUITY REQUIRES THE EQUAL APPORTIONMENT OF THE RECEIVER'S GENERAL FEES/COSTS BETWEEN THE ZILMIL DEFENDANTS AND THE CITRADES DEFENDANTS.**

   a. **Apportioning Nearly All Of The General Fees/Costs To The Zilmil Defendants Is Unreasonable Under The Circumstances.**

The apportionment of 97% ($25,727.78) of the General Fees/Costs to the Zilmil Defendants and only 3% ($795.70) to the Citrades Defendants is unjustifiable and unreasonable. The Receiver argues that the nature and amount of the General Fees/Costs "was primarily driven by the volume of records and information obtained and the amount of assets recovered from the Defendants." (Doc. 62 at p.6). In subsequent discussions with the Zilmil Defendants, the Receiver also attempted to defend his apportionment based on his belief that the allegedly aggrieved investors "nearly 100%" overlapped between the Citrades Defendants and the Zilmil Defendants. None of these reasons justify shifting such an inordinate cost burden to the Zilmil Defendants.

   i. <u>The volume of documents does not justify such a disproportionate allocation.</u>

The Receiver contends that the volume of documents justifies such a disparate allocation. However, a significant portion of the General Fees/Costs was incurred for routine administrative matters that are not related in any way to the volume of records reviewed. These general

5

administrative tasks include preparing a website, opening bank accounts to maintain funds, extensive communications with the CFTC regarding case strategy and document review, meetings with forensic accountants, and the preparation of an interim report. The Receiver's contention makes no sense because the fees and costs for these general tasks have nothing to do with the volume of documents reviewed. If the Receiver's justification for assessing a greater burden on the Zilmil Defendants is a greater volume of documents, then this might show up in the form of higher fees for the lawyers reviewing Zilmil documents. But the General Fees/Costs incurred are completely independent of the volume of documents reviewed.

        ii.       <u>The amount of assets recovered does not justify such a disproportionate allocation.</u>

The Receiver posits that the allocation is warranted based on the amount of assets recovered. This contention likewise evades logic. The fact that the Zilmil Defendants were not as prone as the Citrades Defendants to disposing of their assets lends no support for the decision to shift 97% of the general administrative fees and costs to Zilmil, nor does the fact that one set of Defendants is much more liquid than the other. The Receiver's shifting of such costs is, in effect, a punishment of the Zilmil Defendants for keeping most of their assets domestically, for running responsible and profitable businesses, and for complying with the Court's Preliminary Injunction by repatriating and/or securing offshore assets.

If the Zilmil Defendants were not parties to this action, and the only Defendants were the Citrades Defendants, then the Receiver would have to make some arrangement to cover the costs other than taxing the solvent co-Defendants. The fortuity of having solvent co-Defendants does not justify saddling them with the fees and costs that rightfully should be borne by the less solvent co-Defendant, or absorbed by the CFTC or by the Receiver himself. Insolvent receivership defendants are not uncommon, and receivers who agree to undertake such

6

receiverships sometimes run the risk that such receivership entities will have insufficient assets to cover the costs of the receivership. Such are the risks of receivers who also are handsomely compensated for handling those receivership estates that are solvent. In this case, for example, the Receiver has already requested the Court's approval to pay himself and his law firm over $125,000 in fees, a very lucrative calendar quarter for any law firm for one matter.

> iii. The Receiver's contention that there are mostly "overlapping customers" is untrue and does not justify such a disproportionate allocation.

The Receiver's contention that the Zilmil Defendants and Citrades Defendants had nearly 100% overlapping customers is false and unsupported by the evidence, none of which the Receiver presented in his Fee Motion. While the CFTC purports to identify more than 8,000 customers that entrusted funds with the Citrades Defendants (Doc. 1 at ¶ 76), the Receiver has cited no evidence that any of the 8,000 customers – let alone nearly 100% – had any relationship with Zilmil. In fact, the Receiver has been provided with evidence to the contrary.

The lack of evidentiary support alone dooms this argument. Even if such evidence existed, the argument is still flawed because if all of the Citrades Defendants' customers were also customers of the Zilmil Defendants, then the highest allocation to Zilmil that could be justified is 50%. The only way a customer count would justify allocating 97% of the General Fees/Costs to the Zilmil Defendants is if 97% of the customers were exclusively those of Zilmil and only 3% were exclusively customers of Citrades.

The Receiver has presented no evidence, and there has been no finding, of any overlap of customers between the Zilmil Defendants and Citrades Defendants, let alone the "nearly 100%" overlap alleged by the Receiver. Even if the evidence showed a near entire overlap, and it does

not, such overlap would not justify apportioning all of the General Fees/Costs to the Zilmil Defendants. At best, such overlap might arguably support an even split of those costs.

### b. Equity Requires That The Receiver's General Fees/Costs Should Be Equally Apportioned Between The Zilmil Defendants And Citrades Defendants.

The Court has the discretion to equally apportion the General Fees/Costs between the Zilmil Defendants and the Citrades Defendants under these circumstances. According to the Receiver, he has seized sufficient assets from the Citrades Defendants to cover an equal allocation of the General Fees/Costs. The Receiver bears the burden of justifying his fees and costs, including the allocation thereof, and to date has presented no evidence to the Court that would justify the inordinate allocation against the Zilmil Defendants. The only equitable allocation at this stage of the proceeding is an equal allocation.

The amount of General Fees/Costs at issue in this particular Fee Motion is relatively insignificant. However, there is a risk that the apportionment of these and other costs could set a precedent for future Fee Motions. The CFTC has obtained a freeze of a substantial amount of the Zilmil Defendants' funds that have no relation at all to the alleged conduct, and the Zilmil Defendants are particularly concerned about the depletion of their funds to pay costs that are rightfully borne equally by the Defendants at this stage of the proceeding. The CFTC recently served its responses to the Zilmil Defendants' first set of contention interrogatories and the responses are frankly disturbing. It appears the CFTC is unable or unwilling to identify the evidence to support the vast majority of its allegations about the Zilmil Defendants. The Zilmil Defendants believe the CFTC will be unable at any point to produce evidence supporting many of its allegations. In the meantime, the Receiver is punishing the Zilmil Defendants by charging them with 97% of the fees and costs he has incurred for the general tasks to date. Equity requires that the General Fees/Costs should be equally apportioned between the Zilmil Defendants and

the Citrades Defendants, and that future Fee Motions should be scrutinized to ensure equitable allocations supported by evidence rather than mere unsupported allegations.

## CONCLUSION

For the foregoing reasons, the Zilmil Defendants respectfully request that the Court enter an Order (1) denying that portion of the Receiver's Fee Motion to the extent it seeks to tax 97% of the General Fees/Costs against the Zilmil Defendants; (2) equally apportioning between the Citrades Defendants and the Zilmil Defendants the General Fees/Costs described in Section III.C of the Fee Motion; and (3) granting such further relief the Court deems just and proper.

/s/ Peter B. King
Peter B. King (FBN 0057800)
Jordan D. Maglich (FBN: 0086106)
WIAND GUERRA KING P.A.
5505 W. Gray Street
Tampa, FL 33609
Phone: (813) 347-5100
Fax: (813) 347-5198
Email: pking@wiandlaw.com
Email: jmaglich@wiandlaw.com
Attorneys for Defendants Michael Shah and Zilmil, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 22, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Peter B. King
Attorney
