# Exhibit 2

```
 1            IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
 2                    JACKSONVILLE DIVISION

 3   COMMODITY FUTURES TRADING
     COMMISSION,
 4
              Plaintiff,          Jacksonville, Florida
 5
          -vs-                    Case No. 3:17-cv-774-J-32MCR
 6
     JASON B. SCHARF (d/b/a        Friday, March 16, 2018
 7   CITRADES.COM AND
     AUTOTRADINGBINARY.COM); CIT   1:59 p.m.
 8   INVESTMENTS LLC; BREVSPAND
     EOOD; CIT INVESTMENTS LTD.;   Courtroom 10D
 9   A&J MEDIA PARTNERS, INC;
     MICHAEL SHAH; and ZILMIL,
10   INC.,

11            Defendants.
     _____
12
                 TRANSCRIPT OF HEARING ON MOTIONS
13            BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
                    UNITED STATES DISTRICT JUDGE
14
```

**TRANSCRIPT OF HEARING ON MOTIONS**
BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
UNITED STATES DISTRICT JUDGE

OFFICIAL COURT REPORTER:

    Shelli Kozachenko, RPR, CRR, CRC
    221 N. Hogan Street, #185
    Jacksonville, FL  32202
    Telephone:  (904) 301-6842

(Proceedings reported by stenography;
transcript produced by computer.)

| | |
|---|---|
| 1 | <u>**A P P E A R A N C E S**</u> |
| 2 | |
| 3 | COUNSEL FOR PLAINTIFF: |
| 4 | **Ashley Burden, Esquire** |
| | Commodity Futures Trading Commission |
| 5 | 525 West Monroe, Suite 1100 |
| | Chicago, IL  60661 |
| 6 | |
| 7 | |
| | COUNSEL FOR DEFENDANTS SHAH AND ZILMIL, INC.: |
| 8 | |
| | **Peter King, Esquire** |
| 9 | **Jordan Maglich, Esquire** |
| | Wiand Guerra King, PL |
| 10 | 5505 West Gray Street |
| | Tampa, FL  33609 |
| 11 | |
| 12 | |
| | COUNSEL FOR DEFENDANTS SCHARF AND A&J MEDIA PARTNERS, INC.: |
| 13 | |
| | **Stanley Stone, Esquire**, via telephone |
| 14 | Stone & Stone |
| | P.O. Box 261727 |
| 15 | Encino, CA  91426 |
| 16 | |
| 17 | COUNSEL FOR RECEIVER: |
| 18 | **Russell Landy, Esquire** |
| | Damian & Valori, LLP |
| 19 | 1000 Brickell Avenue, Suite 1020 |
| | Miami, FL  33131 |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1  send a portion of the proceeds to Zilmil for promoting it, a
2  portion of the proceeds to the seller for selling it, and, you
3  know, there's lots of different ways to distribute those funds.
4  　　　　So teeth whitening, health products, ebooks.
5  　　　　Give me a couple others here, Mike.
6  　　　　MR. SHAH:  Green energy.
7  　　　　MR. KING:  Green energy, educational products.
8  　　　　THE COURT:  And so what is the relationship with --
9  so in the scenario you're painting, what is the interaction
10 between Zilmil and Mr. Scharf?
11 　　　　MR. KING:  There were -- it was the same concept.
12 There were e-mails sent out promoting very nonspecific -- and I
13 don't know if you've had an opportunity to look at some of the
14 exhibits to the SRO motion, but there's nothing in there that
15 suggests anything about binary.
16 　　　　It's -- I think somebody described it as making money
17 on the Internet, okay?  That's the nature of these promotions.
18 So "If you want to make a lot of money, click here.  We'll show
19 you how."
20 　　　　They would click there and find their way through a
21 series --
22 　　　　THE COURT:  "You can make good money working at
23 home."
24 　　　　MR. KING:  You can and people do.
25 　　　　THE COURT:  All right.

1  MR. KING: So through a series of clicks, you can get
2  to a Citrades, for example. And then Citrades would pay, as
3  Mr. Burden described, $450 per first-time depositor, so yes,
4  there was a relationship, certainly.
5  THE COURT: All right. So let me get back to, what
6  is -- what is your position on the receiver's past fees and
7  future conduct?
8  MR. KING: Well, I have to start with the
9  receivership order, again, which in paragraph 28 is very
10  specific about the activities, and this is where I got off on a
11  tangent.
12  You know, each receivership order is different. Some
13  of them do permit or direct or authorize the receiver to
14  conduct an investigation. That's not in here. That's not
15  anywhere in here.
16  If you read all of the subparagraphs on paragraph 28
17  together, it's clear that the receiver's duties are really
18  limited to marshalling the assets, figuring out what's going on
19  with the companies, and securing the assets.
20  As I understand Mr. Murena, they're 90 percent done
21  with that, so our position is this should be the end of the
22  road, at least for now.
23  And we would ask that the Court stay the
24  receivership's activities, at least with respect to Zilmil,
25  until there is some evidence that would justify a continuation

1  of that.  Right now there isn't any.  And --
2          THE COURT:  And these businesses -- just so I'm
3  clear, at least from your perspective, these businesses are not
4  operating, so this -- everything that would be pertinent is
5  historical.
6          MR. KING:  Correct.  And, in fact -- I think this
7  needs to be said, Your Honor -- the receiver's job in the
8  case -- I don't know what happened with Citrades and the
9  locking down of assets or any of that.  I have no idea.
10         What I do know is that Zilmil and Dr. Shah were very
11 cooperative with the receiver in securing the assets.  They
12 gave -- they gave what access information, passwords and so
13 forth, they could recall.  They couldn't recall some of them.
14 They identified accounts and things like that.
15         The one thing that we were unwilling to recommend to
16 our client is that he give a detailed accounting, because he
17 had invoked the Fifth Amendment.  There's case law that says
18 he's allowed to do that, so he did, but --
19         THE COURT:  Let me stop you right there.
20         MR. KING:  Yes, sir.
21         THE COURT:  Is Dr. Shah in apprehension of criminal
22 prosecution?
23         MR. KING:  There has been contact.  I would not
24 characterize it the same way that Mr. Stone characterized
25 Mr. Scharf.