IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Case No. 17-cv-774-J-32MCR

Commodity Futures Trading Commission,

    Plaintiff,

v.

Jason B. Scharf (d/b/a Citrades.com and AutoTradingBinary.com); CIT Investments LLC; Brevspand EOOD; CIT Investments Ltd; A&J Media Partners, Inc.; Michael Shah; and Zilmil, Inc.,

    Defendants.

_____

**RECEIVER'S AMENDED[1] MOTION FOR LIMITED INCREASE IN COURT-IMPOSED QUARTERLY LIMIT FOR RECEIVER'S EXPENDITURES DURING SECOND AND THIRD QUARTERS OF 2020**

Kenneth Dante Murena, Esq., the court-appointed Receiver (the "Receiver") in the above-captioned enforcement action, seeks approval to increase the Court's $75,000 quarterly limit of the Receiver's fees and costs to $150,000 for the second quarter of 2020 and to $125,000 for the third quarter of 2020 to facilitate the significant work being performed and to be performed in connection with the fraudulent transfer action against certain members of Defendant Shah's family in addition to the other work the Receiver is performing in this action in fulfillment of his duties

---

[1] The Receiver's initial motion (ECF No. 294) was filed prior to the end of the second quarter and before the Receiver and his professionals had posted all of their time, totaled all of the costs they had incurred, and finalized their invoices for that quarter. The initial motion requested the Court increase the Court's quarterly fee limit to $100,000 for the second quarter of 2020; however, upon review of all of time entries and costs incurred (especially in the Shah Clawback Case, as detailed on page 4, *infra*) the Receiver learned that the fees and costs exceeded the proposed fee limit (even after significant reductions), necessitating this amended motion.

under the Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants Michael Shah and Zilmil, Inc. (the "Permanent Injunction"), and in support states:

## I. BACKGROUND

On April 25, 2019, the Court entered the Permanent Injunction, which, among other things, ordered that the Receiver would "continue in his role as Permanent Receiver . . . pursuant to the PI Order, with the full powers of an equity receiver and as further set forth in Part V of this Consent Order, for the Zilmil Defendants and their affiliates and subsidiaries…." *See* Permanent Injunction at ¶ 10*,* ECF No. 223. The Permanent Injunction also expressly authorizes and directs the Receiver to, among other things, take action to recover assets of and increase the value of the Zilmil Defendants' estates (collectively, the "Estate") and to recover the more than $17 million in restitution owed by the Zilmil Defendants. *See* Permanent Injunction [ECF No. 223] at Section V, ¶ 58(G).[2] Accordingly, from the entry of the Permanent Injunction in April 2019 to date, the Receiver has expended significant time and effort in carrying out his duties.

On December 20, 2019, the Court set a limit on the Receiver's expenditures at $75,000, and permitted the Receiver to seek permission to exceed that limit in the future. *See* ECF No. 253.

## II. RELIEF REQUESTED

The Receiver respectfully requests that the court-imposed quarterly budget for the second and third quarters of 2020 be increased to $150,000 and $125,000 respectively in light of the

---

[2] In the Permanent Injunction, the Zilmil Defendants also consented to the Receiver's carrying out the duties of a full equity receiver, which include, among other things, preserving and liquidating all of the Zilmil Defendants' assets in the Receiver's custody or control, taking action to recover the Zilmil Defendants' assets in the custody or control of the Defendants and third parties, collecting the unpaid portion of the more than $17 million in restitution owed by the Zilmil Defendants, and formulating, proposing and implementing a distribution plan. *See* ECF No. 223 at ¶¶ 10, 26, 34-38, 45-50, 57-58, and 60-62.

significant work the Receiver is required to do under the Permanent Injunction, and developments in this enforcement action and receivership and an ancillary fraudulent transfer action since the entry of the Court's order setting the fee limit at $75,000.

Specifically, since the Court set the $75,000 quarterly limit, Defendant Michael Shah has filed a motion to be relieved from the Receivership, the Receiver has filed a motion to impose a constructive trust over certain assets of Defendant Shah which Defendant Shah claims are not subject to the receivership (requiring extensive analyses by the Receiver's forensic accountant), Defendant Shah has filed a response in opposition to that motion, and Eric Shah has sought and been permitted to intervene in this action for purposes of opposing the Receiver's Motion for constructive trust and filed a response in opposition. *See* ECF Nos. 279 and 289. And the Receiver has had to prepare and file responses, and is preparing reply briefs and a sur-reply, to the foregoing court filings. Moreover, the Receiver has expended significant time and effort working with his counsel, his noticing and claims agent, and counsel for the CFTC to plan for the implementation of the Court-approved claims process. All of the foregoing, in addition to continued efforts to marshal Defendants' assets and other tasks necessary to fulfill the Receiver's duties under the Court's Orders, have occupied and will continue to occupy a considerable amount of the Receiver's and his professionals' time during the second quarter of 2020, thereby significantly increasing the expenses the Estate has incurred and will incur in this enforcement action and receivership.

Further, in the fraudulent transfer action styled *Murena v. Eric Shah, et al.*, Case No. 19-cv-00856-TJC (the "Shah Clawback Case") pending before this Court, in which the Receiver is seeking to recover in excess of $7 million from Defendant Shah's family members, the parties have engaged in extensive discovery and motion practice, requiring the Receiver and his

professionals to devote substantial time and resources to the matter during the second quarter of 2020, significantly increasing the fees and costs incurred by Estate in connection therewith.

Indeed, in the second quarter of 2020, the Receiver's counsel prepared and served written discovery requests on the Shah Family and, together with the Receiver, prepared for and attended a mediation in that action. The parties were unable to settle so the Receiver and his counsel engaged in discovery and began to prepare for trial in that case. The Receiver also responded to the Shah Family's discovery requests, including document production, and propounded written discovery on the Shah Family. The Receiver's counsel engaged in discovery conferral efforts and then took the depositions of each Shah Family defendant. The Receiver was also deposed. The Receiver's counsel also deposed the Shah Family's expert witness and defended the Receiver's expert at her deposition. The Receiver's counsel also issued subpoenas to the Shah Family's accountant and Michael Shah's counsel and worked with the subpoenaed parties on objections and production of documents.

Because the Shah Clawback Case is set for trial in September 2020, it is anticipated that the Receiver and his professionals will need to allocate significant time and resources preparing for, and prosecuting the Receiver's claims at, the trial and throughout the third quarter of 2020. And, in addition to the foregoing work, the Receiver will still need to perform various other tasks necessary to fulfill his duties under the Court's orders during the third quarter. Accordingly, the Receiver believes the Estate is likely to incur attorneys' fees and costs in excess of the $75,000 cap. And the Receiver wishes to avoid a situation where he is unable to adequately prepare for

and participate at trial, while carrying out all of his other duties, or he must suspend work, because he has reached the fee expenditure limit before or during trial.[3]

Accordingly, the Receiver respectfully requests that the Court increase the quarterly expenditure cap from $75,000 to $150,000 for the second quarter and to $125,000 for the third quarter.  **This request should not be an indication that the Receiver and his counsel will incur fees that are not reasonable and necessary to fulfil the Receiver's duties under the Permanent Injunction and the efficient prosecution of the Shah Clawback Case**.  And, as with all fees and costs that have been incurred by the Estate, all fees and costs incurred during the second and third quarters of 2020 will be included in fee applications submitted to this Court for approval.

WHEREFORE, the Receiver respectfully requests that this Court: (i) increase the quarterly limit for fees and costs of the Receiver and his professionals from $75,000 to $150,000 for the second quarter of 2020 and to $125,000 for the third quarter of 2020; and (ii) grant such other relief as this Court deems just and proper.

### CERTIFICATE OF CONFERENCE

The Receiver hereby certifies that counsel for the CFTC informed counsel for the Receiver that they have no objection to the relief requested in this motion.  Counsel for Eric Shah agreed to the relief sought in the Receiver's initial motion, but takes no position as to the relief sought in this amended motion.  Counsel for Michael Shah indicated that Michael Shah does not believe he has sufficient information to take a position and therefore neither consents to nor opposes the requested

---

[3] This motion excludes from the proposed increased limit the fees and costs incurred, and to be incurred, as expert witness fees for the Shah Clawback Case.  Such costs are incurred at the expert witness's standard hourly rates, and not the reduced rate applicable for general forensic accounting work.  Indeed, the Receiver has filed a separate motion for authority to pay the expert witness's fees and costs, which is pending before the court.  ECF No. 290.

relief.  Counsel for the Citrades Defendants stated only: "You can indicate that we are submitting on the pleadings," and did not clarify further.

Respectfully submitted this 21st  day of July, 2020.

**Kenneth Dante Murena, Receiver**
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile:  (305) 371-3965

*/s/ Kenneth Dante Murena*
Kenneth Dante Murena, Esq.
  Florida Bar No. 147486
  E-mail: kmurena@dvllp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of July, 2020, a true and correct copy of the foregoing was served by CM/ECF, upon all counsels of record, and by U.S. Mail and/or e-mail upon all parties listed in the Service List below.

*/s/ Kenneth Dante Murena*
Kenneth Dante Murena, Receiver

## SERVICE LIST

Joseph Konizeski, Chief Trial Attorney
Ashley J. Burden, Senior Trial Attorney
U.S. Commodity Futures Trading Commission
525 West Monroe Street
Suite 1100
Chicago, IL 60661
jkonizeski@cftc.gov
aburden@cftc.gov
*Counsel for the Plaintiff*

6

Peter B. King, Esq.
Matthew Mueller, Esq.
WIAND GUERRA KING P.A.
5505 W. Gray Street
Tampa, FL 33609
pking@wiandlaw.com
mmueller@wiandlaw.com
*Counsel for Defendant Michael Shah*

Stanley H. Stone
STONE & STONE
PO Box 261727
Encino, CA 91426-1727
stonelawfirm@earthlink.net
*Counsel for Defendants Jason B. Scharf and A&J Media Partners, Inc.*

Michael A. Nardella, Esq.
Paul N. Mascia, Esq.
NARDELLA & NARDELLA, PLLC
135 W Central Blvd., Suite 300
Orlando FL 32801
mnardella@nardellalaw.com
pmascia@nardellalaw.com
*Counsel for Intervenor, Eric Shah*